MR. JUSTICE GULBRANDSON,
dissenting:
I respectfully dissent.
The majority, in affirming the award of $200,000 compensatory *480 damages to include 28 years of lost income in the future, and $70,000 punitive seems to rely mainly on (a) objective manifestations of job security for Stark, (b) evidence of inaccurate inventory figures used by Herring, and (c) lack of candor by Herring to infer malice sufficient to justify the punitive damage award.
Any objective manifestations of job security given Stark by way of positive write-ups, promotions and salary increases were prior to the inventory shortages arising in the spring of 1984. From that time, until termination on August 22, 1984, there were no positive write-ups, commendations, or salary increases for Stark, but there were meetings, counselings, and discussions regarding the serious matter of major inventory shortages in the district. The inventory shortages supplied to Herring, as District Manager, indicated that Stark had the worst inventory shortages of any zone manager in Herring’s district. The actual inventory figures, for Stark’s zone, supplied to Herring were: April — $3,469.19 short; May — $608.70 overage; June — $1,340.44 short; July — $3,244 short; and preliminary August figures — $6,750 short. The September overages obviously were not available until after Stark’s refusal to sign the employee counseling report and subsequent termination on August 22. The majority opinion overlooks the fact that Stark was present during the inventories, made no objection to the figures, signed the inventories, and failed to implement the control inventory procedure if he thought the inventory figures were incorrect, even though he had participated in twenty-three inventories as a manager. The manner in which Stark was discharged, in my opinion, did not indicate any basis to submit the issue of punitive damages to the jury. The record is clear that both meetings between Herring and Stark took place in a private, secluded place with no other persons present. The discussions were limited to control of inventories and the request that Stark sign the counseling report. Herring testified that no other Circle K employee or manager had ever refused his request to sign the counseling report and the evidence is clear that Stark drafted similar reports and required that his subordinates sign them. The fact that Herring had Stark’s final paycheck with him at the second meeting cannot, in my opinion, be used to infer malice justifying punitive damages. Herring testified that had Stark signed the counseling report upon the second request, Stark would not have been terminated, but, in anticipation that Stark might again refuse to sign, he had the check prepared because he thought he had to deliver an employee’s final check within 24 hours. Section 39-3-205(2), MCA, is as follows:
*481 “(2) When an employee is separated for cause from employment by the employer, all the unpaid wages of the employee shall become due and payable immediately upon such separation.”
Section 39-3-206, MCA, provides the following penalties for failure to comply with Section 39-3-205:
“Any employer, as such employer is defined in this part, who fails to pay any of his employees as provided in this part or violates any other provision of this part shall be guilty of a misdemeanor. A penalty shall also be assessed against and paid by such employer and become due such employee as follows: a sum equivalent to the fixed amount of 5% of the wages due and unpaid shall he assessed for each day, except Sundays and legal holidays, upon which such failure continues after the day upon which such wages were due, except that such failure shall not be deemed to continue more than 20 days after the date such wages were due.”
It seems that a Catch-22 situation has been created when an employer, attempting to comply with a statute to avoid a misdemeanor conviction and a doubling of wages due an employee, can have evidence of said attempts at payment used against him to justify an award of punitive damages.
The transcript of the final oral argument of plaintiffs counsel includes the following:
“[L]ike Mr. Milodragovich said, you’ve got to send a message to Phoenix, you’ve got to tell these people that in Butte, Montana, you’ve got to follow your policies because that is what the law says. These people only understand money. That is all they understand is money. That is the bottom line. That is why they are in business. There is an exhibit in here that says that the gross sales of Circle K Corporation is 1.6 Billion Dollars. Big, big company. It says here that the net worth is 122 Million Dollars. Now, I would think that if a Million dollars was had to be paid by this company that they would get it right the next time. That they wouldn’t push people around. That they would admit that they did things wrong. That is the only way that you are ever going to teach these people what they are doing. It’s like sending a message to Phoenix just like Mr. Milodragovich said.
“You know what the crowning glory is in this case? It’s that Cheryl Wellnitz came down from Great Falls with Mr. Herring on the 22nd to drive Greg Stark’s car back. He knew he was going to terminate Greg Stark on the 22nd. It wasn’t that he gave him another opportunity to sign that report. He was getting rid of him. He didn’t want to *482 check into any information. He was getting rid of him. His final pay check was made out. He had that with him. If he didn’t intend to fire him, what did he have the final pay check for? . . .”
In my opinion, the issue of punitive damages should not have been allowed, over objection, to be considered by the jury, and the trial judge should have so ruled, based upon the evidence presented.
The failure of the trial judge to dismiss the punitive damages claim, and the subsequent refusal to enter judgment n.o.v., or to grant a new trial, in my view, constitutes reversible error.
By allowing evidence of the defendant’s company’s gross sales of over 1.5 billion dollars and a net worth of over 122 million dollars, the entire trial was contaminated with highly prejudicial, but wholly irrelevant, evidence.
I would therefore reverse the judgment entered and would remand for a new trial on the issue of breach of the covenant of good faith and compensatory damages, if any.
MR. CHIEF JUSTICE TURNAGE and MR. JUSTICE HARRISON concur in the foregoing dissent of MR. JUSTICE GULBRANDSON.